**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Riyaid SWIDAN, Defendant–Appellant.**

No. 89–1178.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1989.

Decided Oct. 30, 1989.

Rehearing and Rehearing En Banc Denied Dec. 14, 1989.

F. William Soisson, argued, Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Christopher A. Andreoff, argued, Evans & Luptak, Detroit, Mich., for defendant-appellant.

Before: MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Riyaid Swidan ("defendant") appeals his jury convictions on three counts of distributing and aiding and abetting the distribution of lysergic acid diethylamide ("LSD"), a Schedule I non-narcotic controlled substance. For the reasons that follow, we affirm.

## I.

### A.

On August 19, 1987, the federal grand jury for the Eastern District of Michigan returned a twenty-two-count indictment against defendant and three other individuals: Kenneth Creslaw, David Parker, and David Williams. Defendant was charged in Counts 18, 20, 21, and 22 with knowingly, intentionally, and unlawfully distributing and aiding and abetting the distribution of LSD, a Schedule I controlled substance in violation of 21 U.S.C. § 841(a)(1), on April 18, 1985, October 2, 1985, December 11, 1985, and January 16, 1986.

A jury trial commenced on August 15, 1988, and on August 23, 1988, the jury

returned a verdict of guilty with respect to Counts 18, 20, and 22, but found defendant not guilty as to Count 21. On January 27, 1989, the district court sentenced the defendant to three concurrent ten-year terms of imprisonment to be followed by a special parole term of three years for each count, fined defendant $7,500 on each count, and imposed a special assessment of $50 on each count. This timely appeal followed.

### B.

In April 1985, detectives with the Michigan State Police and the Macomb County Sheriff's Department were conducting an undercover investigation into drug activity. During the course of this investigation, detectives arranged a meeting with an individual named Kenneth Creslaw for the purpose of purchasing 10,000 tablets of LSD.

On April 18, 1985, Sergeant Debra Pilkas and Detective Donna Mercier met Creslaw at his apartment. Creslaw took the detectives to unit 20 in a trailer park in the City of Inkster, where they were introduced to an individual named "Troy," who was subsequently identified as David Williams. Williams told Pilkas that he did not have the LSD at the trailer, but that it was a short distance away and he could pick it up.

Williams left the trailer at approximately 11:00 p.m., and he was followed by undercover agents who had initiated surveillance of the drug purchase at the trailer park in Inkster. Williams drove to defendant's store, R.J.'s Party Store, at 23405 Van Born Street in the City of Taylor. When Williams entered the store, the only other persons observed inside were the defendant and a woman later identified as defendant's wife, Debra Swidan. Williams met with defendant, who was working behind the counter at the store. After approximately twenty minutes, Williams left the store carrying a brown paper bag, entered his car, and drove directly back to the trailer in Inkster.

Williams entered the trailer carrying a brown paper bag. According to Sergeant Pilkas, Williams took a white bag out of the brown paper bag and went to a back room with Creslaw. Shortly thereafter, Creslaw returned from the back room, carrying ten plastic baggies, each containing 1,000 tablets of LSD. When the LSD was produced, the surveillance officers entered the trailer and arrested Williams and Creslaw. At the time of his arrest, officers seized from Williams a telephone pager. Shortly after the arrest, the number for R.J.'s Party Store appeared on the pager on two occasions. At various times, other telephone numbers also appeared on the pager.

In September 1985, Officer Michael Ianitelli of the Detroit Police Department was working with federal law enforcement agents in a narcotics investigation involving Kenneth Creslaw. During the course of this investigation, Ianitelli came in contact with an individual named David Parker. On September 9, 1985, Ianitelli arranged through Parker to purchase 5,000 tablets of LSD from David Williams. Williams told Ianitelli he was lucky to have that quantity available because his boss had just started "fronting him" larger quantities of LSD since his arrest in April by the Michigan State Police. Williams also told Ianitelli that his source of LSD was paranoid about surveillance and described to Ianitelli how his source would transact drug business without being detected.

In October 1985, investigators decided to purchase a larger quantity of LSD from Williams to see if he would go to his source of supply to obtain the drugs. On October 2, 1985, Ianitelli went to Williams' residence at 4976 Heather Place, Wayne, Michigan, and ordered 10,000 tablets of LSD. Williams told Ianitelli he had only 4,000 tablets and he would have to go to a source to secure the quantity ordered. Williams made a telephone call and asked to speak to a person named "Ray." After a short telephone conversation, Williams told Ianitelli he had to go to his boss' home and it might take a while because his boss had another business to take care of.

Williams left the Heather Place residence at approximately 1:40 p.m., and surveillance officers followed him directly to R.J.'s Party Store where he met with the

defendant. After about twenty minutes, Williams left the store and proceeded to a residence at 21305 Wick Road. Williams spent approximately half an hour at the Wick Road residence, then returned to R.J.'s Party Store. Williams entered the store, remained inside for about ten minutes, then exited the store with the defendant and an unidentified male, all of whom entered defendant's Ford Bronco. Defendant drove eastbound on Van Born Street in an erratic manner, as if trying to detect surveillance, and then proceeded to his residence at 10094 Ruth Street, Allen Park, Michigan. Defendant and Williams returned to R.J.'s Party Store at approximately 3:30 p.m. The unidentified male was not observed returning to the store. Defendant entered the store, and Williams entered his vehicle and returned to his Heather Place residence, where Ianitelli had been waiting for delivery of the LSD for approximately two and one-half hours. Williams told Ianitelli the reason for the delay was that his boss was busy running his store and he had to go to his boss' house to get the LSD. Williams then turned over the 10,000 tablets of LSD to Officer Ianitelli.

On December 11, 1985, Ianitelli went to Williams' Heather Place residence to purchase another 10,000 tablets of LSD. Williams told Ianitelli he had to call his boss. Williams unsuccessfully attempted to call his boss on a beeper number several times. Williams then called another number and asked for "Ray's" beeper. During his attempts to call his boss, Williams told Ianitelli that his boss' wife would be upset because he was calling the house and that she would really be mad because he had to go to his boss' house. Unsuccessful in his attempts to reach his boss by telephone, Williams told Ianitelli he would be gone a couple of hours because he had to go to his boss' house. Ianitelli gave Williams $5,500 for the 10,000 tablets of LSD and Williams left.

Williams entered his vehicle at approximately 11:40 a.m., and surveillance agents followed him directly to defendant's residence at 10094 Ruth Street in Allen Park. Williams left defendant's residence at ap-

proximately 12:30 p.m., and because of communication problems, the surveillance agents lost contact with his vehicle for approximately one and one-half hours. Surveillance agents next observed Williams traveling west on Van Born Street, away from R.J.'s Party store at approximately 2:00 p.m. Williams then proceeded to his Heather Place residence where Ianitelli was waiting. Upon his return, Williams told Ianitelli that the reason for the delay was that he had to go to his boss' house and then had to meet him at a separate location to pick up the drugs.

On January 16, 1986, Officer Ianitelli arranged to purchase another 10,000 tablets of LSD from Williams. Ianitelli met Williams at the Heather Place residence at approximately 11:30 a.m. and gave him money. Williams said he would be back quickly because he had already spoken to his boss and the deal was set. Williams told Ianitelli he was going to his boss' house.

Williams entered his vehicle and proceeded directly to defendant's residence on Ruth Street in Allen Park. After approximately five minutes, Williams left defendant's residence and drove to a residence at 1940 Buckingham Street in Lincoln Park. After staying approximately two and one-half hours, Williams left the Buckingham Street residence and returned to defendant's residence. Williams stayed at defendant's residence for two or three minutes, then drove to a residence on Birch Street in Taylor, Michigan. After approximately one hour, Williams left the Birch Street residence and returned to defendant's residence, where he stayed a short period of time, then returned to the Birch Street residence. Williams entered the Birch Street residence and exited almost immediately, re-entered his vehicle, and drove to his Heather Place residence at approximately 4:45 p.m., where Ianitelli was waiting. Upon his return, Williams handed Ianitelli a package containing the 10,000 tablets of LSD and explained the reason for the delay was that his boss was sick and wanted Williams to take him to the hospi-

tal. He said he convinced his boss not to go to the hospital, and he got the LSD.

At the trial, defendant denied ever having delivered LSD to Williams on any occasion. David Williams, who pleaded guilty to the charges of distributing LSD, testified he never obtained LSD from defendant. Williams also testified he always had the drugs on hand when he made the transactions with the undercover agents and he only pretended not to have them in order to avoid a "rip-off." Williams further testified that he visited defendant on the dates he made the transactions to repay a loan from the defendant. On cross-examination, Williams admitted the only person he knew named "Ray" was the defendant. The issues presented in this appeal are: (1) whether there is sufficient evidence to support the defendant's convictions; (2) whether the district court erred in admitting a coconspirator's statements under Federal Rule of Evidence 801(d)(2)(E); (3) whether the district court erred in failing to instruct the jury concerning the use of coconspirator's statements; (4) whether the defendant was denied effective assistance of counsel; and (5) whether the cumulative effect of the alleged errors deprived defendant of his due process right to a fair trial.

## II.

### A.

■ Defendant argues there was insufficient evidence to support his convictions on three counts of distributing and aiding and abetting the distribution of LSD. Generally, when the sufficiency of the evidence is challenged on appeal, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). However, the standard of review is different where the defendant fails to preserve his right to challenge the sufficiency of the evidence. This court has held, "Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where

the defendant did not renew that Motion at the close of *all* the evidence." *United States v. Faymore*, 736 F.2d 328, 334 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984) (emphasis in original). In this case, defense counsel did not make a Rule 29 motion at any time. Thus, absent a "manifest miscarriage of justice," defendant has forfeited his right to challenge the sufficiency of the evidence. *Id.* Our review of the record reveals no manifest miscarriage of justice which would authorize review of defendant's challenge to the sufficiency of the evidence. Defendant's claim is therefore barred by his failure to make a Rule 29 motion. *Id.*

### B.

■ Defendant argues the district court erred in admitting coconspirator hearsay statements because there was insufficient evidence to establish the necessary knowledge and participation in a joint venture as required by Federal Rule of Evidence 104(a). A coconspirator's statement is admissible if the trial court concludes that a preponderance of the evidence establishes: "(1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy, and (3) that the hearsay statement was made in the course and in furtherance of the conspiracy." *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *accord United States v. Enright*, 579 F.2d 980, 986 (6th Cir.1978). In making this preliminary factual determination as to admissibility, the court may consider the content of the statements themselves to support the preponderance finding. *Bourjaily v. United States*, 483 U.S. 171, 177–78, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987). Furthermore, the fact that defendant was not charged with conspiracy is irrelevant because a conspiracy need not be charged in order to use coconspirator hearsay. *United States v. Horton*, 847 F.2d 313, 323–324 (6th Cir.1988).

■ In the present case, the district court admitted the coconspirator's state-

ments subject to a later demonstration of their admissibility by a preponderance of the evidence. *Vinson*, 606 F.2d at 153. At the close of the government's case-in-chief, the district court made the required finding that the government met the *Enright* burden of proof and ruled the coconspirator's statements were admissible. Having reviewed the evidence, we agree with the district court's conclusion that the government met the *Enright* standard. Williams' statements about obtaining the drugs from his "boss" and his practice of driving to defendant's home and business during the transactions established that it was more likely than not that Williams and defendant were members of a conspiracy when the hearsay statements were made and that the statements were in furtherance of the conspiracy. *Enright*, 579 F.2d at 987–988. Thus, the coconspirator statements were properly admitted.

### C.

■ Defendant next argues it was error for the district court to fail to instruct the jury concerning the standard it should apply before considering coconspirator statements. This court expressly disapproved giving a similar jury charge on the use of coconspirator statements in *Enright*. *Id.* at 987. The trial court has the sole responsibility for ruling on the admissibility of evidence. *Id.* "Since our construction of Rule 104(a) expands the trial court's role and imposes the more stringent standard of a preponderance test, there is even less excuse for giving such a potentially confusing and internally inconsistent instruction to the jury, and we disapprove its use." *Id.*

### D.

■ Defendant argues he was denied effective assistance of counsel because his counsel failed to move for a judgment of acquittal, failed to request an instruction relating to coconspirator statements, and failed to object to certain arguments made by the prosecutor. However, defendant did not present this claim to the district court. This court will not review an ineffective assistance of counsel claim raised for the first time on appeal. *United States v. Pelletier*, 845 F.2d 1126, 1131 (1st Cir.

1988); *United States v. Lopez*, 728 F.2d 1359, 1363 (11th Cir.) (per curiam), *cert. denied*, 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 56 (1984); *United States v. Freeze*, 707 F.2d 132, 138 (5th Cir.1983). "This rule is necessary because the record of the trial court's proceeding is normally insufficient for purposes of evaluating counsel's performance." *Lopez*, 728 F.2d at 1363. Therefore, defendant is precluded from raising this issue.

### E.

Finally, defendant argues the cumulative effect of the alleged errors and the ineffective assistance of his trial counsel denied his due process right to a fundamentally fair trial. However, all the errors alleged by the defendant have been rejected. There can be no accumulation of errors when no errors are found. *United States v. Petary*, 857 F.2d 458, 463 (8th Cir.1988). Thus, we conclude that defendant was not denied his due process right to a fundamentally fair trial.

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.