916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ira D. BARCLAY, Defendant-Appellant.
 No. 90-1249.
 United States Court of Appeals, Sixth Circuit.
 Oct. 18, 1990.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Ira Barclay ("defendant") was indicted by a grand jury in the Eastern District of Michigan on one count of conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. Sec. 846 and on two counts of aiding and abetting the distribution of heroin in violation of 21 U.S.C. Sec. 841(a)(1). A jury convicted defendant on all three counts. Defendant appeals, claiming ineffective assistance of counsel and violation of the District Court's discovery order. Finding no error, we AFFIRM.
 
 
 2
 The Drug Enforcement Administration ("DEA") initiated an investigation by using Robert Hesley ("Hesley"), a government informant, to buy narcotics from two individuals conspiring to sell such narcotics, Rory Jones ("Jones") and "Pancho." Hesley personally met with Jones during the deals. Pancho only communicated with Hesley over the phone. Hesley never met with Pancho and could not visually identify him. To Hesley, Pancho was a faceless voice. To the government, however, Pancho was an alias used by defendant. Thus, one of the government's primary burdens at trial was clear: marshalling the evidence to show that Pancho and defendant were the same person.
 
 
 3
 Initially, the government introduced evidence to show that "Pancho" collaborated with Jones to sell drugs to Hesley. Some time prior to February 13, 1989, Hesley met with Jones at Pancho's house in Oak Park, Michigan, to discuss future drug deals. Jones gave Hesley two beeper numbers at this time, one for Jones and one for Pancho. Later that day, Jones sold Hesley 1.45 grams of heroin. On February 16, Hesley spoke with Pancho on the telephone; this conversation indicated that Jones and Pancho worked together in selling Hesley the heroin on February 13. Hesley gave Pancho his phone number, a number which was really a monitored phone line at DEA headquarters.
 
 
 4
 On February 21, 1989, Hesley made arrangements to purchase more heroin from Jones and Pancho. Once the deal was set up, DEA agents gave Hesley $8,000 in currency and kept a list of the serial numbers of these bills. Hesley purchased 37.85 grams of heroin from Jones with this money. After the transaction, Pancho called Hesley on the undercover phone line and indicated that Jones had given him the money from this transaction. Pancho talked to Hesley several times afterwards and gave Hesley his mobile phone number, 520-4922.
 
 
 5
 The government then introduced evidence to show that defendant was the "Pancho" involved in these drug transactions. After the first drug transaction on February 13, 1989, surveillance agents followed Jones back to a house in Oak Park. This fact is significant in light of the events occurring on February 22, 1989.
 
 
 6
 In the early morning hours of February 22, 1989, several unknown persons attempted to kill one or more occupants of the house in Oak Park. Further investigation revealed that the occupants of the house at that time were defendant, Jones, Laudric Parker and Leica Price Barclay, defendant's wife. Defendant contacted the Oak Park police. During the interview of Leica Barclay, a police officer found her to be in possession of $8,980. The officer gave Leica Barclay a receipt for this money after which defendant asked the officer, "Why did you take my money?" The serial numbers of the $8,000 used in the drug transaction matched the $8,000 of the currency carried by Leica Barclay. Thereafter, federal agents obtained a search warrant for defendant's house.
 
 
 7
 A search of defendant's house uncovered more evidence. Agents found two guns, a beeper, several bulletproof vests, and a small quantity of heroin in the bedroom of defendant and his wife, Leica. The beeper contained the number "773-2207" in its memory, the undercover DEA number which Hesley had sent to Pancho's beeper on the previous day, February 21, 1989. Other items seized included a marriage license showing that defendant and Leica Barclay were married and listing defendant's address as the house in Oak Park; and a phone bill in the name of Leica Price for a mobile telephone with a number of 520-4922, the number Pancho had given to Hesley.
 
 
 8
 At the time of defendant's arrest on July 26, 1989, federal agents seized several items that were within defendant's reach. The agents found a .9mm handgun under defendant, a beeper, a bulletproof vest, a car phone, and two notebooks. One of the notebook covers had written on it the words "Puncho's phone book." The notebook contained a series of drug-related notations. With respect to the beeper, one of the DEA agents dialed the phone number which Pancho had given to Hesley, and defendant's beeper sounded in response. The beeper also had a piece of tape on it with a partially illegible word beginning with the letters "P-U-N."
 
 
 9
 At trial, the government introduced the testimony of Agent Buckel, one of the DEA agents working on the case. Agent Buckel testified that he was familiar with defendant's voice and that it sounded like the voice of Pancho in the telephone conversations recorded by the DEA during the course of the investigation. Agent Buckel also testified that defendant, after being arrested, told Agent Buckel that he used the alias "Pancho." Although required to provide all statements made by defendant, the government had not advised defense counsel of this oral statement until two days before trial. The disclosure was made as soon as the Assistant United States Attorney learned of the statement.
 
 
 10
 As a result of defense counsel's cross-examination, the government attempted to call Agent Syme to the stand in an effort to corroborate Agent Buckel's testimony regarding defendant's admission. Defense counsel objected to this and pointed out that the government had not informed defense counsel of defendant's alleged statement until approximately two days before trial. Thereupon, the government withdrew its request to call Agent Syme. The District Court decided that withdrawal of this by the government was a sufficient sanction.
 
 
 11
 Defendant contends that he was denied his sixth amendment right to counsel because of defense counsel's ineffective assistance at trial with respect to two specific acts.[1] First, trial counsel made no effort prior to the start of trial to suppress certain physical evidence, the guns and bulletproof vests found in defendant's bedroom at the time of his arrest. Second, trial counsel failed to object to Agent Buckel's testimony or to move for mistrial on account of the government's late notification to defendant of the content of Agent Buckel's testimony.
 
 
 12
 The United States Supreme Court has set forth the standard for determining whether a defendant receives effective assistance of counsel as required by the sixth amendment. Strickland v. Washington, 466 U.S. 668 (1984). The Strickland Court promulgated a two-part test. First, the defendant must show that defendant's trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Second, defendant must demonstrate that the "deficient performance prejudiced the defense." Id. A reviewing court need not address both requirements of the test if defendant makes an insufficient showing on one of the requirements. Id. at 697. The two prongs focus on the performance of defense counsel and its impact on the integrity of the trial proceedings. The goal of these two requirements is to ensure a fair trial, that is, a trial whose result is reliable. Id.
 
 
 13
 Defense counsel must perform in a manner that meets an objective standard of reasonableness under prevailing professional norms. The goal of this requirement is not to improve the quality of legal representation. Rather, the purpose is to guarantee that a defendant receives a fair trial. Id. at 689. A court which reviews trial counsel's conduct must be highly deferential and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ...." Id.
 
 
 14
 With respect to the prejudice prong, a defendant must affirmatively prove prejudice. Id. at 693. Defendant's burden of proof falls between two extremes. On the one hand, a defendant will not prove prejudice by showing that the errors had some conceivable effect on the outcome of the trial proceedings. Yet defendant need not show that the errors more likely than not affected the outcome of the proceedings. Id. Defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering this claim, a court must consider the totality of the evidence presented at the trial proceeding. Id. at 695.
 
 
 15
 Applying the Strickland test, we conclude that defense counsel's failure to move to suppress evidence does not fall below an objective standard of reasonableness and thus does not constitute ineffective assistance of counsel. This Court has held that the "mere failure to object to evidence ... does not render counsel ineffective." Lockett v. Arn, 740 F.2d 407, 412 (6th Cir.1984), cert. denied, 478 U.S. 1019 (1986). This type of decision generally falls within the ambit of trial strategy. Counsel must exercise his best professional judgment in deciding whether sufficient reasons exist for moving to suppress particular evidence. United States v. Brown, 663 F.2d 229, 231 (D.C.Cir.1981). This judgment must be accorded deference. Otherwise, defense counsel would have to file a motion to suppress in every possible instance in order to avoid a charge of ineffective assistance. Id. Moreover, it is unlikely that such a motion would have resulted in suppression of the evidence. See United States v. Arnott, 704 F.2d 322, 325-26 (6th Cir.) (holding that evidence of possession of weapons may be admitted in cases involving an indictment for distribution of narcotics based on the permissible inference that such weapons are "tools of the trade" used by a defendant to protect his narcotics enterprise), cert. denied, 464 U.S. 948 (1983); United States v. Marino, 658 F.2d 1120 (6th Cir.1981). Defendant has not pointed to any case which would support such a motion.
 
 
 16
 Similarly, defense counsel's failure to object to the testimony of Agent Buckel regarding defendant's admission and to move for a mistrial does not constitute ineffective assistance of counsel. In view of the District Court's disposition of the Fed.R.Crim.P. 16 violation, the court would have admitted the testimony of Agent Buckel. Moreover, the exclusion of this evidence would not have altered the outcome of the trial proceeding. The purpose of Agent Buckel's testimony regarding defendant's admission was to prove that defendant used the alias "Pancho." The government introduced other evidence for this purpose: Agent Buckel's conclusion that the voice of Pancho on the taped conversations was defendant's voice; Jones' return to defendant's residence after the drug transactions on February 13 and 21, 1989; the presence of Hesley's phone number on a beeper found in defendant's bedroom, a number Hesley had sent to Pancho's beeper on the previous day; the possession by defendant's wife of the $8,000 used by Hesley to purchase narcotics from Jones and defendant's claim that this was his money; a notebook entitled "Puncho's phone book" in possession of defendant at the time of his arrest; and a beeper in possession of defendant at the time of his arrest which corresponded to the nubmer used by Hesley to contact Pancho and on which was written an illegible word beginning with the letters "P-U-N." Viewing the totality of the evidence, defense counsel's failure to object to the relevant portions of Agent Buckel's testimony does not undermine confidence in the outcome of the proceedings.
 
 
 17
 Defendant also contends that he was denied due process of law by the District Court's failure to give a curative instruction or declare a mistrial based on Agent Buckel's testimony regarding defendant's admission of his use of the alias "Pancho." Defendant points out that this statement by Agent Buckel was not made part of defendant's original discovery materials. See Fed.R.Crim.P. 16. He asserts that this omission by the government violated defendant's right to due process.
 
 
 18
 It appears, however, that the government did not violate Rule 16 and defendant's right to complete discovery. The relevant section of Rule 16 provides:
 
 
 19
 If, prior to or during trial, a party discovers evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that other party's attorney or the court of the existence of the additional evidence or material.
 
 
 20
 Fed.R.Crim.P. 16(c). The government made available to defense counsel the statement of Agent Buckel at the time the Assistant United States Attorney first learned of its existence. There is no evidence that the government willfully or negligently violated the discovery order. Thus, the government has complied with Rule 16.
 
 
 21
 Even assuming a violation of Rule 16 by the government, defendant was not denied due process because the court failed to give a curative instruction or to declare a mistrial. A court is given broad discretion to deal with the noncompliance of Rule 16:
 
 
 22
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.
 
 
 23
 Fed.R.Crim.P. 16(d)(2). Rule 16 does not require a court to take specific action when noncompliance occurs. See United States v. Bartle, 835 F.2d 646 (6th Cir.1987), cert. denied, 485 U.S. 969 (1988). Rather, a court has the discretion to take whatever action it deems just.
 
 
 24
 In the instant case, the District Court's actions do not violate defendant's right to due process. Having previously been notified of the nature of Agent Buckel's testimony, defense counsel chose to cross-examine Agent Buckel. When the government attempted to introduce another witness to corroborate Agent Buckel's testimony, defense counsel objected and the government withdrew its request. In light of defense counsel's cross-examination and the government's withdrawal of its other witness, the District Court concluded that the situation had been remedied without the need for a curative instruction. We hold that the District Court did not abuse its discretion by taking these actions.
 
 
 25
 For the aforesaid reasons, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 The government contends that defendant is barred from raising this issue on appeal because defendant did not first raise this issue with the District Court. United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). Yet, as the Swidan Court points out, the purpose of this rule is to ensure that a sufficient record exists for a reviewing court to evaluate counsel's performance. Id. We find the record sufficiently detailed to permit a review of this issue on the merits vis-a-vis defense counsel's conduct in two specific instances, and we limit our review of this issue to these two acts