933 F.2d 1010
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tommy PORTER, Defendant-Appellant.
 No. 90-2019.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1991.
 
 Before KEITH and BOGGS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Lorenzo Evans, a government informant and principal witness in this case, supplied cocaine to Dwight Rashad[1] on several occasions. Evidence showed that the transfer of drugs usually took place at the Hilton Hotel parking lots in Southfield, Michigan, at a White Castle restaurant parking lot, or at Rashad's home in Detroit. In their usual procedure, Rashad would call Evans to order amounts of cocaine; the two would agree on a meeting place and then Rashad would usually send a third person to pick up the cocaine from Evans. In 1987 or 1988, defendant Tommy Porter became this third person with whom Evans met.
 
 
 2
 Evans testified at Porter's trial on drug charges that he sold cocaine to defendant Porter on approximately six to twelve occasions. Defendant purportedly purchased from five to ten kilograms of cocaine per transaction. Evans was not specific about the specific dates these transactions allegedly occurred.
 
 
 3
 On February 22, 1989, after he began cooperating with the government, Evans called Rashad to set up a drug transaction. Several calls took place between Evans and Rashad on that day, and most of these conversations were recorded. In these conversations, Rashad agreed to purchase ten kilograms of cocaine from Evans at approximately 7:00 that evening. Rashad told Evans he would send "Tommy" to one of the Hiltons in the "usual vehicle." Evans told Rashad that a friend, Audrey, would be waiting in the back lot of the Hilton with the cocaine. They agreed on a price of $14,750 per kilogram, a total of $147,500.
 
 
 4
 That evening, DEA agents set up surveillance at the Hilton Hotel parking lot. As anticipated, defendant arrived at approximately 7:20 p.m., driving a Lincoln automobile. Porter pulled in the back lot of the hotel and drove around in a slow manner, appearing to survey the area. He then got out of his car, looked around, and got back into the car and drove to the front lot of the Hilton. After cruising the front lot, Porter turned around and returned to the back lot. The law enforcement agents then turned on their emergency blue lights of their vehicles to stop or to block the defendant. Apparently seeing the lights, defendant attempted to flee the parking lot, but the agents stopped and apprehended him.
 
 
 5
 When the agents arrested defendant, they seized a duffle bag which contained $147,500 in cash, the precise amount involved in the planned ten kilogram transaction. We AFFIRM the conviction.
 
 
 6
 I. ADMITTING INTO EVIDENCE THE TAPE CONVERSATION BETWEEN
 
 RASHAD AND EVANS
 
 7
 Defendant maintains that the district court committed reversible error by admitting what he claimed were hearsay taped conversations between Rashad and Evans. The district court admitted this evidence pursuant to Fed.R.Evid. 801(d)(2)(E), the co-conspirator exception to the hearsay rule. Porter argues that the district court failed to apply the correct preponderance of the evidence standard in determining the admissibility of the taped conversations and that the government failed to carry its burden of proving that the tapes were admissible. We find defendant's arguments not to be persuasive.
 
 
 8
 Rule 801(d)(2)(E) excludes from the definition of hearsay a statement that is offered against a party, made by a co-conspirator, during the course and in furtherance of the conspiracy. It is well established that this rule applies to joint ventures as well as conspiracies. See United States v. McCullah, 745 F.2d 350, 358 (6th Cir.1984). See also United States v. Coe, 718 F.2d 830, 835 (7th Cir.1983) ("Conspiracy as an evidentiary rule differs from conspiracy as a crime. The crime of conspiracy comprehends much more than just a joint venture or concerted action, whereas the evidentiary rule of conspiracy is founded on concepts of agency law.... [S]ome courts refer to the coconspirator exception as the 'joint venture' or 'concert of action' exception."). Before a statement is rendered admissible under Rule 801, the government must prove by a preponderance of the evidence a conspiracy or joint venture existed and that the statements were made in furtherance of the conspiracy or joint venture. Bourjaily v. United States, 483 U.S. 171, 175 (1987). We do not overturn findings of fact by the district court unless clearly erroneous.
 
 
 9
 In this case, the district court admitted the taped conversations subject to a later demonstration of their admissibility by a preponderance of the evidence. We have approved this procedure on many occasions. See United States v. Swidan, 888 F.2d 1076, 1080-81 (6th Cir.1989); United States v. Vinson, 606 F.2d 149, 153 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980); United States v. Enright, 579 F.2d 980 (6th Cir.1978). Furthermore, it is appropriate for the district court to consider the content of the statements themselves to support the preponderance finding. Bourjaily, 483 U.S. at 177-78; Swidan, 888 F.2d at 1080.
 
 
 10
 The district court found that the government proved the statements in the taped conversations were made as part of a joint venture between defendant and Rashad, and that the statements were made in the course and in furtherance of the joint venture. This finding is not clearly erroneous.
 
 
 11
 There was evidence that defendant had been involved in prior drug transactions with Rashad. The drug transaction in this case was remarkably similar to the prior transactions in that Evans sent defendant with the money to purchase cocaine at one of the locations frequently used to conduct such a transaction. Defendant drove the "usual car"[2] to the appointed place at the usual time, and there cautiously surveyed the scene. Defendant tried to flee when the agents identified themselves and tried to apprehend him. He was wearing a bulletproof vest when arrested and carrying a beeper. We find sufficient evidence to support the district court's conclusion; there was no error demonstrated.
 
 II. SUPPRESSION OF EVIDENCE
 
 12
 Defendant makes an argument for the first time on appeal that evidence of the cash he was carrying should be suppressed. He argues that his fourth amendment rights were violated because the government agents did not have probable cause either to arrest him or to search his vehicle. Defendant asserts that the district court's failure to suppress all of the evidence obtained at the Hilton parking lot mandates a reversal of his conviction.
 
 
 13
 Relying on Fed.R.Crim.P. 12(b) and 12(f), the government responds that defendant waived the suppression issue by not bringing a timely motion before the district court. We recently held that the failure to raise a suppression issue in the district court deprives the appellate court of jurisdiction to consider the issue because the objection is "conclusively deemed to be waived." United States v. Crismon, 905 F.2d 966, 969 (6th Cir.1990). This principle applies even if the issue involves the alleged deprivation of a constitutionally protected right. Because defendant failed to raise the suppression issue at any time during trial, he waived objection to the admission of the evidence obtained as a result of his arrest and search. We need not consider this issue on appeal.
 
 III. ERROR IN SENTENCING
 
 14
 Defendant maintains finally that the district court failed to determine whether the 30 kilogram figure, used to calculate his base offense level, was supported by the evidence. He claims that he objected specifically to the inclusion of the 30 kilograms relevant conduct in the case.
 
 
 15
 The government, on the other hand, contends that defendant objected only to certain portions of the presentence report, and did not specifically address the quantity of cocaine for which defendant was held accountable under the sentencing guidelines. The government argues that defendant, through his counsel at sentencing, objected only to a portion of the presentence report addressing the time frame in which defendant had been involved in cocaine purchases.
 
 
 16
 The portion of the presentence report to which defendant objected stated that Evans had testified that Evans had sold cocaine to defendant on six to twelve occasions in amounts ranging from five to ten kilograms each. The sentencing judge indicated the following at the hearing:
 
 
 17
 I'm going to strike out the last sentence of paragraph eight [of the presentence report]. That is the sentence starting, "These prior drug activities by Tommy Porter." I'm going to leave the first sentence, indicating that is what Mr. Evans testified to. And whoever reads it, can draw there [sic] own conclusions. I am not going to make that conclusion.
 
 
 18
 While these remarks are not altogether clear, the court did unquestionably apply the recommended base offense level of 34 in this case. This took into account thirty kilograms of cocaine from prior dealing as relevant conduct.
 
 
 19
 Sentencing Guideline Sec. 1B1.3(a)(2) states that base level "shall be determined on the basis of ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of the conviction." Quantities of drugs which are not included in the conviction or indictment charges may be added in calculating the base offense level if they are found to be a part of the same course of conduct, common scheme, or plan. United States v. Sailes, 872 F.2d 735 (6th Cir.1989). Whether uncharged drugs are part of a common scheme or plan is a factual issue which must be determined by the district judge. United States v. Miller, 910 F.2d 1321, 1327 (6th Cir.1990), cert. denied, 111 S.Ct. 980 (1991). The preponderance of the evidence standard applies to factual determinations under the guidelines, United States v. Castro, 908 F.2d 85, 90 (6th Cir.1990), and findings of fact should not be disturbed unless clearly erroneous. Miller, 910 F.2d at 1327.
 
 
 20
 Although the district court's finding as to the quantity of drugs for which defendant was accountable was done by necessary inference, we are satisfied that it is not necessary to remand this matter for a more specific finding.
 
 
 21
 The base offense level might well have been higher had the court considered the higher numbers testified to by Evans. Porter admitted prior involvement to law enforcement officers. The minimum amount of relevant conduct cocaine was added to the ten kilogram quantity involved in the indictment offense. Porter, in any event, is subject to a ten year statutory minimum.
 
 
 22
 For the reasons indicated, we AFFIRM.
 
 
 
 [1]
 Rashad was indicted with defendant, but his indictment was subsequently dismissed, evidently because he was sentenced to life without parole on an unrelated state charged in Michigan
 
 
 [2]
 Defendant argues that because Evans testified that the "usual car" was a blue or brown Lincoln and he was driving a green Lincoln, that the statements were not evidence of a joint venture. Evidence that Porter was driving a Lincoln at the particular time and place and under these circumstances was sufficient