951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene MACKEY, Defendant-Appellant.
 No. 91-1491.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1991.
 
 Before BOYCE F. MARTIN, Jr., and SUHRHEINRICH, Circuit Judges; and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Eugene Mackey appeals his jury conviction for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; possession with intent to distribute cocaine and aiding and abetting the offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, respectively; and the use and carrying of a firearm during drug trafficking and aiding and abetting the offense, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, respectively. The district court sentenced Mackey to five years imprisonment on the conspiracy count, three years and one month on the possession count, and five years on the firearm count. Mackey raises four issues on appeal: (1) whether the district court abused its discretion in refusing to grant him a continuance; (2) whether he was denied effective assistance of counsel; (3) whether the evidence was sufficient to sustain Mackey's conviction on the conspiracy and firearm counts; and (4) whether the district court erroneously enhanced Mackey's offense level under the Federal Sentencing Guidelines. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 On May 16, 1989, a confidential informant and Deon Hogan, an agent of the Bureau of Alcohol, Tobacco and Firearms, entered a house in Detroit to make an undercover cocaine purchase. Mackey met Hogan and the informant as they entered the house. Hogan noticed two men in the living room besides Mackey. The first man was seated in a chair loading and unloading a sawed-off shotgun. Mackey looked over to the other second man and stated "you know the procedure" and "do your job." In response to Mackey's statements, the man approached Hogan and searched him for weapons. As the man searched Hogan, Mackey asked Hogan for a $5.00 "entry fee" and asked him if he wanted cocaine or women. Hogan responded he wanted cocaine.
 
 
 3
 Mackey led Hogan to a bedroom and directed him to wait there. Inside the bedroom co-defendant James Lunn was smoking crack cocaine. Lunn apparently lived in the house, which his mother owned. When Hogan asked Lunn whom he was supposed to pay for the crack cocaine, Lunn said that Mackey would handle the transaction. A few minutes later, Mackey returned to the bedroom and asked Hogan for $55.00, which Hogan gave to him. Mackey left the room, but soon returned and led Hogan to a coffee table in the living room upon which nine rocks of crack cocaine were displayed. The man with the sawed-off shotgun was seated next to the coffee table. He pointed the weapon at Hogan and continued to load and unload it. Mackey chose a rock and handed it to Hogan. The man with the sawed-off shotgun continued to play with the weapon until Mackey looked at him and stated: "You're making people nervous. Why don't you stop racking that thing?" The man stopped racking the shotgun, but continued to point the weapon at Hogan. Mackey then called an unidentified gunman to the front door and instructed him to look out for a van that was parked down the street. Shortly thereafter, Hogan left the house.
 
 
 4
 The next day ATF agents executed a search warrant at the house. When the agents arrived, Mackey, Lunn, and several other individuals were present. Neither the individual with the sawed-off shotgun nor the individual who frisked Agent Hogan on the previous day were present. The agents found 25 rocks of crack cocaine, a scale, and five firearms. They did not find a sawed-off shotgun.
 
 
 5
 The district court scheduled trial for mid-December. On December 18, 1989, the parties stipulated to an "ends of justice" continuance; the court entered an order continuing the trial until January 9, 1990. On the morning of January 9, 1990, defense counsel sought an additional two-week continuance to look for persons who might have been present when the undercover drug transaction occurred. Defense counsel stated that the lateness of his request resulted because he disagreed with Mackey over the theory of the latter's defense. Counsel wanted to concede guilt on the charge of possession with intent to distribute cocaine and challenge only the conspiracy and firearm charges. Apparently at the last moment, however, Mackey revealed to his attorney that he wanted to deny selling crack cocaine to Agent Hogan and that there were persons who were present when ATF agents executed the search warrant on May 17, 1989, who could testify regarding the drug transaction on May 16, 1989. It was apparent from defense counsel's argument during the motion for continuance that defense counsel had known for several months that other persons were present in the house during the drug sale. Counsel stated that he had little luck finding the identity of those persons; he now wanted the prosecution's assistance. Specifically, he wanted a list of those persons present when the ATF agents executed the search warrant on May 17, 1989. Defense counsel hoped this information would lead him to witnesses who could testify that Mackey did not sell cocaine to Agent Hogan.
 
 
 6
 Even though approximately ten persons were present when the agents executed the search warrant, the government's attorney stated that she knew only the identity of three women. The court granted a one-day adjournment to give defense counsel an opportunity to find and subpoena the three women. The next day defense counsel stated that he had located, interviewed, and subpoenaed only one of the three women; he was unable to locate the other two women. The district court proceeded with trial. By the time the prosecution rested its case, the women had not shown up. Defense counsel requested that the court grant him additional time or issue a bench warrant to compel the witness' attendance. After defense counsel told the court that the witness had revealed to him that she had not been in the room at the time of the drug transaction, the court refused to issue a bench warrant. The court reasoned that a bench warrant was improper because the witness' proffered testimony was neither material nor favorable to the defense. The court simply adjourned the trial overnight giving defense counsel additional time to locate the witness.
 
 
 7
 By the next morning, the women still had not shown up. Defense counsel did not request additional time. Because there were no other witnesses, Mackey chose not to testify on his own behalf and the defense rested. A jury convicted Mackey of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; possession with intent to distribute cocaine and aiding and abetting the offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, respectively; and the use and carrying of a firearm and aiding and abetting the offense, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, respectively. The court sentenced Mackey to three consecutive five-year terms of imprisonment. Mackey filed an appeal to this court.
 
 
 8
 While preparing its appellate brief, the government discovered that it had overestimated the amount of crack cocaine attributable to Mackey for purposes of sentencing under the Federal Sentencing Guidelines. Both parties stipulated that resentencing was appropriate. On February 15, 1991, we remanded the case to the district court for resentencing, but expressly reserved the parties' rights to pursue a new appeal on those issues not resolved by the resentencing hearing. Upon remand, the district court sentenced Mackey to five years on the conspiracy count, three years and one month on the possession count, and five years on the firearm count. The court ordered Mackey to serve the sentences consecutively. This appeal followed.
 
 
 9
 On appeal, Mackey argues that the district court erred when it refused to grant him an additional continuance so that he could locate witnesses for his defense. In Washington v. Texas, 388 U.S. 14, 19 (1967), the Supreme Court recognized that the right to offer the testimony of witnesses and, if necessary, to compel their attendance is a fundamental element of due process. The failure of a trial court to grant a continuance to enable the defendant to exercise this right is, under certain circumstances, a denial of due process. Bennett v. Scroggy, 793 F.2d 772, 774 (6th Cir.1986). To determine whether a trial court deprived a defendant of his constitutional right, we consider the following factors:
 
 
 10
 (1) the diligence of the defense in interviewing witnesses and securing their presence;
 
 
 11
 (2) the probability of securing their testimony within a reasonable time;
 
 
 12
 (3) the specificity with which the defense is able to describe the witnesses' expected knowledge or testimony;
 
 
 13
 (4) the degree to which such testimony is expected to be favorable to the defendant; and
 
 
 14
 (5) the unique or cumulative nature of the testimony.
 
 
 15
 Id. ( quoting Hicks v. Wainwright, 633 F.2d 1146, 1149 (5th Cir.1981) ( quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir.1976) (footnotes omitted))). See also United States v. Boyd, 620 F.2d 129, 132 (6th Cir.) ("To justify a continuance for the purpose of locating a witness, the moving party must show that the witness would have given substantial favorable evidence and that he was available and willing to testify."), cert. denied, 449 U.S. 855 (1980).
 
 
 16
 In United States v. Sawyers, 902 F.2d 1217, 1219 (6th Cir.1990), cert. denied, 111 S.Ct. 2895 (1991), we held that the district court did not abuse its discretion when it refused to grant the defendant's request for a continuance. The defendant was charged with cultivating marijuana plants. Id. at 1218. The missing witness was the defendant's cousin, whom the defendant claimed actually grew the marijuana. Id. at 1219. On the day of trial, the defendant requested a continuance claiming that the witness had "bolted" before the defendant could serve him with a subpoena. Id. at 1218-19. In upholding the district court's decision, we stated that the defendant (1) did not exercise due diligence in finding a witness whom he knew from the beginning was central to his defense; and (2) did not demonstrate any probability that the potential witness would be able to testify within a reasonable period of time or was available and willing to testify. Id. at 1219.
 
 
 17
 Similarly, in this case we find that the district court did not abuse its discretion in denying Mackey an additional continuance to locate witnesses. Mackey did not exercise reasonable diligence in revealing to his attorney a method of locating witnesses who could testify that he did not sell crack cocaine to Agent Hogan. Mackey apparently waited until the morning of trial to make such a revelation. Moreover, Mackey could not demonstrate to the court any probability that the potential witnesses would be able to testify in a reasonable time, or that the witnesses were available or willing to testify. The defense counsel had very few leads on possible witnesses, and defense counsel stated that he believed any witness would likely be reluctant to come forward. The correctness of defense counsel's belief is best exemplified by the fact that the one witness he was able to subpoena during the one-day adjournment failed to show up for trial. Under these circumstances, the district court properly proceeded with trial.
 
 
 18
 Mackey argues that he was denied effective assistance of counsel because his attorney failed to adequately investigate his case prior to trial. Mackey raises this argument for the first time on appeal. As a general rule, we will not review an ineffective assistance of counsel claim raised for the first time on appeal. United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). See also United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991) ("Because an ineffective assistance of counsel claim may not be raised for the first time on appeal, we are precluded from addressing the merits of [the defendant's] claim."); United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990) ("Furthermore, although it strongly appears that defendant Rocha was not denied effective assistance of counsel, this court declines to consider the claim of ineffective assistance of counsel for the first time on appeal."); United States v. Iles, 906 F.2d 1122, 1136 (6th Cir.1990) ("Iles also argues that he was denied effective assistance of counsel. We decline to address this claim since Iles did not first present it to the district court."). We have adopted this rule because on direct appeal of a criminal conviction the trial court record is normally insufficient to evaluate a trial counsel's performance. Swidan, 888 F.2d at 1081 (quoting United States v. Lopez, 728 F.2d 1359, 1363 (11th Cir.) (per curiam), cert. denied, 469 U.S. 828 (1984)). Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue. United States v. Frazier, 936 F.2d 262, 267 (6th Cir.1991). We will consider an ineffective assistance of counsel claim on direct appeal of a criminal conviction only when the record is adequate to assess the merits of the defendant's allegations. See United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). In this case, because Mackey raises his ineffective assistance of counsel claim for the first time on appeal and the record is not adequate to assess the merits of his claim, we will not review his claim.
 
 
 19
 Mackey also argues that there was insufficient evidence to support his conviction on the conspiracy and firearm charges. Usually when a defendant challenges the sufficiency of the evidence, we view the evidence in a light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). However, when the defendant fails to move for a judgment of acquittal at the close of all the evidence, we will not review the sufficiency of the evidence absent a manifest miscarriage of justice. Swidan, 888 F.2d at 1080; United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984).
 
 
 20
 In this case, Mackey did not make a Fed.R.Crim.P. 29 motion for judgment of acquittal at any time during the trial. Thus, absent a manifest miscarriage of justice, he has waived his right to challenge the sufficiency of the evidence. Upon review of the record, we find no manifest miscarriage of justice; therefore, we decline to review the sufficiency of the evidence.
 
 
 21
 Finally, Mackey argues that the district court erred by enhancing his offense level under Federal Sentencing Guideline § 3B1.1(c) for his leadership role in a drug conspiracy. United States Sentencing Commission, Guidelines Manual, § 3B1.1(c) (Nov.1990). Guideline § 3B1.1(c) states that the district court must increase a defendant's offense level by two levels if the defendant was an organizer, leader, manager, or supervisor of a criminal association involving less than five participants. Id.
 
 
 22
 The district court's determination that Mackey was an organizer, leader, manager, or supervisor is a factual finding subject to the clearly erroneous standard of review. United States v. Williams, 894 F.2d 208, 213 (6th Cir.1990). See also United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991) (a district court's finding as to the applicability of § 3B1.1 is a factual finding subject to the clearly erroneous standard of review). A district court's findings of fact are not clearly erroneous unless we are left with a definite and firm conviction that the district court has made a mistake. See Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 23
 The application notes to § 3B1.1 delineate the factors a court should consider in determining whether a defendant is an organizer, leader, manager, or supervisor:
 
 
 24
 Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 25
 Guidelines Manual, § 3B1.1, comment. (n. 3). The prosecution must prove the defendant's status as an organizer, leader, manager, or supervisor by a preponderance of the evidence. Gonzales, 929 F.2d at 216.
 
 
 26
 In this case, the following evidence was before the district court:
 
 
 27
 (1) Mackey ordered an individual to frisk Agent Hogan and the individual did so;
 
 
 28
 (2) Co-defendant Lunn told Agent Hogan that Mackey was the one handling the drug transaction;
 
 
 29
 (3) Mackey took Agent Hogan's money and also selected and gave the agent the crack cocaine;
 
 
 30
 (4) Mackey ordered an man to stop racking a shotgun and the man obeyed; and
 
 
 31
 (5) Mackey ordered an individual to look out for a van that was parked down the street.
 
 
 32
 This evidence is sufficient to support the district court's conclusion that Mackey was an organizer, leader, manager, or supervisor under Guidelines § 3B1.1(c). Because we are not left with a definite and firm conviction that the district court erred in its decision, we uphold Mackey's two-level enhancement under § 3B1.1(c).
 
 
 33
 For the foregoing reasons, we affirm the judgment of the district court.