89 F.3d 836
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio Arteaga DIAZ, Defendant-Appellant.
 No. 95-1382.
 United States Court of Appeals, Sixth Circuit.
 June 19, 1996.
 
 Before: KRUPANSKY, DAUGHTREY and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant-appellant, Antonio Arteaga Diaz, argues before this court that his guilty plea, entered in the district court, was neither knowing nor voluntary and claims that his counsel rendered ineffective assistance. For the reasons stated below, we affirm the judgment of the district court.
 
 
 2
 Diaz was indicted for his role in a conspiracy to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846. After conducting discovery, Diaz agreed to cooperate with the government and furnished information implicating himself and several of his co-conspirators. Diaz then entered into a Rule 11 plea agreement and signed an "Acknowledgment of Advice as to Constitutional Rights" on December 5, 1994. The plea agreement provided that the government would not seek a period of incarceration in excess of six months above the lower limit of the applicable sentencing range. The district court later calculated the applicable sentencing range as 135 to 168 months for an offense level of 31 and a criminal history category of III. Based on the range of 135 to 168 months, therefore, the Rule 11 Plea agreement effectively limited the maximum sentence to 141 months.
 
 
 3
 The agreement noted, however, that the district judge had the authority to reject the plea agreement. In addition, the agreement provided that if Diaz provided "substantial assistance" in the investigation of other defendants, the government would move the court to depart downward and recommend a sentence range of 60 to 72 months. The government reserved the right, however, to make the substantial assistance determination. The agreement also stipulated that the court's failure to follow such a recommendation would not provide a basis for the defendant to withdraw his guilty plea.
 
 
 4
 Diaz appeared in court on December 5, 1994, and initially pleaded guilty to the government's charge. Subsequently, however, he qualified his guilty plea and stated, "Yes, but--what I am involved in, what I plead guilty for, is the 50 kilos. I assisted in that." The following colloquy ensued:
 
 
 5
 The Court: I understand that. The question is, let me ask just one question here. Let me ask just one simple question. I think we--does he understand--do you understand you have a right to have a trial before a jury in this matter instead of pleading guilty?
 
 
 6
 The Defendant (through interpreter): Yes.
 
 
 7
 The Court: All right. Now I have explained to you certain rights you have if you were to have a trial. And you have indicated you understand them. And you say you understand the other ones, other rights contained in the acknowledgment of advice as to constitutional rights, is that true?
 
 
 8
 The Defendant: Yes.
 
 
 9
 The Court: Is it still your desire to plead guilty?
 
 
 10
 The Defendant: I want to plead guilty for what I have done. They told me that if I would plead guilty, they would reduce it to five to six years.
 
 
 11
 The Court: Is it still his desire to plead guilty. Is it or isn't it. We are in the proceedings right now. What is he saying?
 
 
 12
 The Defendant: I wouldn't want to plead guilty, I just don't know the law enough.
 
 
 13
 The Court: All right. I think we can't take a plea of guilty. We will have to go to trial starting tomorrow. I don't think it's a voluntary plea. I cannot--he doesn't want to plead guilty, we will go to trial. He will be one of the defendants to go to trial tomorrow morning.
 
 
 14
 Mr. Daniel [defense counsel]: May I speak with him?
 
 
 15
 The Defendant: Yes, I will plead guilty.
 
 
 16
 Diaz stated that he was pleading guilty because he "hired this guy, and I went along with them, but I didn't pick up the marijuana or touch it or anything, but he did pick it up." Diaz also claimed that "[he] did it to do a favor to my nephew. That is why I am pleading guilty, to what I have done," i.e. one instance of hiring and accompanying someone to transport 50 kilograms of marijuana.
 
 
 17
 At the end of the hearing on December 5, 1994, the district court took the defendant's guilty plea and the Rule 11 agreement under advisement and rescheduled a sentencing date for February 13, 1995.
 
 
 18
 On December 16, 1994, Diaz apparently wrote a letter directly to Judge Gilmore without notifying his counsel. The government concluded that the letter contradicted Diaz's earlier position and exculpated a co-defendant against whom Diaz was scheduled to testify. As a result, the government turned the letter over to the other defendants and decided not to call Diaz as a witness. The government notified Diaz that no substantial assistance motion would be filed. Diaz filed a motion to compel, seeking to maintain the guilty plea and to compel the government to file the substantial assistance motion.
 
 
 19
 Two hearings on Diaz's motion to compel were held on February 8, and February 16, 1995. The lower court denied the motion and ruled that the 135 to 141 months range would apply as provided under the plea agreement. During the second hearing, the court also ruled that Diaz's guilty plea was freely and voluntarily given.
 
 
 20
 Significantly, during the hearing on February 16, Diaz's attorney suggested and the government stated that it would not object if Diaz chose to withdraw his plea. The court recessed for 25 minutes while Mr. Daniel discussed with his client the possibility of withdrawing his guilty plea, then adjourned the matter for 11 days to reconvene on February 27, 1995.
 
 
 21
 On February 27, Diaz's counsel indicated that after consulting with him for over two hours, the defendant did not wish to withdraw his plea. Diaz instead wanted to file objections to the presentence report which attributed 1,000-3,000 kilograms of marijuana to him and calculated his sentencing range as a leader. The government did not object and the court granted Diaz's motion to file objections to the presentence report.
 
 
 22
 The government once again questioned whether Diaz wished to affirm his guilty plea:
 
 
 23
 Mr. Waterstreet [Assistant U.S. Attorney]: Well, I guess what we need to find out is his intent to go ahead with the guilty plea and then know we're moving to the sentencing phase or are we going to see how the Judge rules on that and then he's going to want to withdraw his plea?
 
 
 24
 Mr. Daniel: My client indicated to me in jail Saturday that he did not wish to withdraw his plea, but he did wish to have his participation clearly defined so the sentence would be appropriate.
 
 
 25
 The Court: So, what you're saying is you are going to stand by the plea, but you want to file something to [refute] the 1,000 to 3,000 and the two point enhancement?
 
 
 26
 Mr. Daniel: That's correct, Your Honor. I'd like to have the interpreter state that to my client to make sure that he knows and understands.
 
 
 27
 (Whereupon Defense Counsel, Interpreter Langley, and the Defendant confer.)
 
 
 28
 The Court: I think, Gentlemen, we're going to--
 
 
 29
 Mr. Daniel: Your Honor, my client has affirmed that it is his wish not to withdraw the guilty plea. He merely wants to have his role defined so that the penalty is consistent with his participation.
 
 
 30
 At the sentencing held on March 20, 1995, Judge Gilmore asked Diaz again whether he wished to continue his guilty plea.
 
 
 31
 Mr. Daniel: I think the Court inquired whether or not he wanted to withdraw his plea, but in rather erroring on the side of caution, I'll ask him again.
 
 
 32
 The Court: Ask him again, will you?
 
 
 33
 Mr. Daniel: Will you ask him if it is his desire to continue in his guilty plea?
 
 
 34
 Interpreter Langley: "Yes, it is my desire, but just for what I did."
 
 
 35
 The court ruled against Diaz's objections to the guidelines calculations and sentenced him to the minimum sentence in of 135 months.
 
 
 36
 Diaz's claim that his plea was not knowing and voluntary is meritless. A review of the record reveals that Judge Gilmore made conscientious efforts to ensure that Diaz's guilty plea was voluntary. In addition, he also attempted scrupulously to ensure that Diaz understood the nature of the charges against him and the consequences of his guilty plea.
 
 
 37
 First, Diaz signed the "Defendant's Acknowledgement of Advice as to Constitutional Rights," in which he acknowledged that he had a "right to plead not guilty, and to persist in that plea"; his attorney also vouched that he had "explained the nature of the charges against [Diaz], his constitutional rights, and the punishment that could be imposed upon his guilty plea" and that Diaz "appears to be sane and competent to stand trial."
 
 
 38
 Second, any doubt that remained about Diaz's intention after the guilty plea hearing was conclusively resolved at the subsequent hearings. Diaz filed a motion to compel the government to recommend a downward departure for substantial assistance--a motion which presumed a valid guilty plea. During the two hearings on February 8, and February 16, 1995, furthermore, Diaz unequivocally indicated that his wished to maintain his guilty plea.
 
 
 39
 Third, after Diaz's motion to compel was overruled and he faced a sentence range of 135 to 141 months, the district court and the government agreed to allow Diaz an opportunity to withdraw his guilty plea. Judge Gilmore first recessed for 25 minutes, then adjourned for 11 days while Diaz's attorney consulted with his client about the option of withdrawing his plea.
 
 
 40
 Fourth, when the court reconvened on February 27, 1995, Diaz clearly reconfirmed his desire to maintain his guilty plea. Upon the Diaz's request, the court again granted an adjournment for the defendant to file objections to two sentencing issues in the presentence report.
 
 
 41
 At the sentencing, Diaz was again given an opportunity to withdraw his plea but refused.
 
 
 42
 Diaz now claims that the judge violated the requirements of Rule 11 when he scheduled the preparation of a presentence report after the guilty plea hearing. The Notes of the Advisory Committee on Rules, Fed.R.Crim.P. 11, 1966 Amendment, states, however, that "[t]he court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty."
 
 
 43
 Diaz further suggests that he did not understand the nature of the charge against him. Yet, during the guilty plea hearing, the court asked:
 
 
 44
 The Court: Is it necessary for me to read the indictment?
 
 
 45
 Mr. Daniel: It's not necessary to read the indictment. I am convinced he understands the accusation against him.
 
 
 46
 The Court: Do you understand the accusations against you, Mr. Diaz?
 
 
 47
 The Defendant (through interpreter): Yes.
 
 
 48
 The district court reviewed the Rule 11 agreement with Diaz, stating the various consequences of choosing to plead guilty and providing substantial assistance. In addition, his attorney, Mr. Daniel, indicated that he conferred with his client for over two hours and together reviewed the presentence report in order to determine whether to withdraw the guilty plea. Mr. Daniel also requested a translation of the indictment, the presentence report, and the Rule 11 agreement for Diaz's personal perusal. The court agreed, commenting, "I guess we might as well err on the side of caution."
 
 
 49
 We conclude that Diaz's guilty plea was knowing and voluntary.
 
 
 50
 The only other question involved here is a claim of ineffective assistance of counsel raised by Diaz for the first time on appeal. The general rule is clear that this court will not review such a claim if raised for the first time on appeal. United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991) (citing United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989)). We have recognized an exception to this rule, however, where the record is adequate to review the merits of defendant's allegations. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (citing United States v. Hilliard, 752 F.2d 578 (11th Cir.1985)).
 
 
 51
 Diaz rests his claim of ineffective assistance of counsel on purely speculative grounds. He argues in his brief that "[w]hen the trial judge effectively delayed proceedings ... counsel probably used the additional time to encourage Defendant to plead guilty rather than prepare for trial." Diaz suggests that because his attorney was unprepared to conduct a trial, Mr. Daniel endeavored to persuade Diaz to maintain his original plea. Diaz simply offers no evidence indicating that Mr. Daniel performed deficiently or that due to his deficient representation, "there is a reasonable probability that, but for the counsel's errors, [Diaz] would not have pleaded guilty and would have insisted on going to trial." Thomas v. Foltz, 818 F.2d 476, 480 (6th Cir.1987) cert. denied, 484 U.S. 870 (1987). We find no basis on which to review the claim that Diaz received ineffective assistance of counsel.
 
 
 52
 The judgment of the district court is AFFIRMED.