**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis Herman RUSHCAMP, Jr.,
Defendant-Appellant.**

**No. 75–1512.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 2, 1975.

Decided Dec. 12, 1975.

---

12. J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 10–4 at 321–322 (1972).

Gene A. Farber, Craig & Farber, Roger Craig, Detroit, Mich., for defendant-appellant.

Frank Spies, U. S. Atty., Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff-appellee.

Before EDWARDS and ENGEL, Circuit Judges, and HARVEY,* District Judge.

PER CURIAM.

In a non-jury trial in the United States District Court for the Western District of Michigan defendant was convicted of knowing possession of a German 8.8 centimeter rocket launcher which had not been registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871. The sole issue in this appeal[1] is whether the rocket launcher, at the time it was seized, was a "destructive device" within the meaning of 26 U.S.C. § 5845(f). That section defines "destructive device" as:

(2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter . . . 26 U.S.C. § 5845(f)(2).

The only witness who testified at the trial was James L. Pickelman, an expert in arms and explosives, employed by the Michigan State Police at its crime laboratory in Holland, Michigan. The balance of the proof consists of a stipulation of facts and evidence including the rocket launcher itself.

Pickelman described the rocket launcher and its operation in some detail before the District Court and testified also that while it was normally designed to receive German 8.8 centimeter rockets, it could propel as well a 3.5 inch U.S. Military rocket. He further testified that he had test fired three such rockets from the launcher at the Michigan National Guard Base at Grayling, Michigan. He admitted, however, that he was unable to test fire the rockets with the firing mechanism incorporated in the launcher itself, for reasons which he could not explain. This necessitated instead that he employ a ten cap generator, although Pickelman indicated that a 1½ volt flashlight battery could also have fired the rocket. Pickelman described the normal firing of the weapon:

Now, to fire this mechanism, a rocket is placed in the open end, on this end, and would be fired by depressing the trigger, which generates a current of electricity through the contact points in the base of the rocket, which in turn ignites the propellant charge in the rocket and traverses the rocket down the launcher and out the tube.

[1, 2] Appellant contends that because the launcher was basically a metal tube open at both ends and because Pickelman testified that any such pipe

---

* The Honorable James Harvey, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Rushcamp's second ground for appeal, challenging the holding that he was in possession of the rocket launcher at the time in question, was abandoned at oral argument.

could launch a similar rocket by application of the same external electrical charge, it must follow that the rocket launcher itself was not a destructive device within the meaning of the statute. After quoting extensively from *United States v. Posnjak*, 457 F.2d 1110 (2d Cir. 1972), which outlined in detail the legislative history of the statute, District Judge Noel P. Fox, in his memorandum opinion, correctly observed:

> It is abundantly clear that the device in issue was described by Congress in 26 U.S.C. sec. 5845(f) and must be registered in conformity with 26 U.S.C. sec. 5841. It has been suggested by the counsel for the defendant that the defendant did not possess a weapon, but instead possessed a thirty year old piece of pipe, and that the only weapon involved was the rocket itself. This is not the case. The statutes involved do not purport to regulate all materials or devices which could prove harmful, such as a 3.5 inch pipe. They do, however, regulate "military-type" weapons such as bazookas, S.Rep. No. 1501, supra, at 25, 30; 114 Cong.Rec. 26898, 26900, 27133 (1968). The device in issue is much more than a mere pipe. It has a trigger and a firing device, electrical circuitry, a blast shield, a sighting device, and a shoulder and hand rest. Indeed, it has been stipulated that the device is a rocket launcher. It is exactly the "military-type" weapon that the statutes speak of. Any tube of proper dimensions is not covered by the statutes in question, but certain tubes are, and the device in issue is one such tube.

Although it is true that the expert was unable to explain the exact reason for the malfunctioning of the launcher's own wiring system, we do not deem this fatal to the government's proofs since even without that mechanism the launcher could be fired with a simple battery or detonator. The statute does not demand that the device operate necessarily as originally intended. It is sufficient that the destructive device "may be readily converted to, expel a projectile by action of an explosive or other propellant . . .". So much was demonstrated by the expert when he fired three rounds from the device in question.

Affirmed.

EDWARDS, Circuit Judge (dissenting).

In this case defendant, who was found guilty of possessing a firearm (*i.e.,* a German World War II bazooka), in violation of 26 U.S.C. § 5861(d) (1970) (the National Firearms Act), appeals from his conviction and sentence of one year's probation. The disputed statutory definition reads:

> (f) Destructive device.—The term "destructive device" means . . . any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter . . . . 26 U.S.C. § 5845(f) (1970).

There is no dispute that the bazooka was seized in defendant's constructive possession on the premises of a motorcycle club of which he was president. It is, however, defendant's vigorously argued claim that the record at trial did not show that the bazooka in question was a weapon which was capable of being fired or "which may be readily converted to expel a projectile." [1]

The government's expert witness testified that he had been unable to fire the German bazooka from World War II when he sought to use its firing mechanism and added that he didn't know why it did not fire or what could be done to get it to fire. But he also testified that by using an electric generator (of the type used for blasting) he was able to fire American bazooka shells from the German bazooka. Apparently because

---

1. This language appears to me to be Congress' method of distinguishing historic pieces held as mementos or curios which are inoperative and cannot readily be made operative, from prohibited "destructive devices."

acquisition and use of a blasting generator was hardly ready conversion, he also testified that in his opinion a 1½ volt flashlight battery would produce sufficient electricity for the firing. He did not, however, testify as to how the flashlight battery could be attached or employed so as to accomplish the ready conversion.

Since I do not feel this record discloses government proofs which were sufficient to satisfy the statutory requirement outlined above, I respectfully dissent.