UNITED STATES of America,
Plaintiff–Appellee,

v.

Sergio GONZALES, a/k/a Sergio
Gonzalez, Defendant–Appellant.

No. 90–1544.

United States Court of Appeals,
Sixth Circuit.

Argued March 18, 1991.

Decided and Filed April 3, 1991.

Robert M. Kalec, Asst. U.S. Atty., Michael J. Stern (argued), Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Kim D. Johnson (argued), Detroit, Mich., for defendant-appellant.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant Sergio Gonzales challenges the adequacy of his trial counsel

and the length of his sentence following his cocaine-trafficking conviction. For the following reasons, we affirm Gonzales' conviction and sentence.

## I.

In July, 1989, Salvador Rodriguez ("Agent Rodriguez"), a special agent with the Drug Enforcement Administration ("DEA"), received information from a confidential informant that defendant-appellant Sergio Gonzales ("Gonzales" or "appellant") was selling cocaine. Following a preliminary investigation by the DEA, the confidential informant agreed to purchase an ounce of cocaine from Gonzales on July 21, 1989 at a Burger King parking lot in Detroit, Michigan.

Before meeting with Gonzales, the informant and his car were thoroughly searched to ensure that the informant did not possess any controlled substances. The informant was then given $600 in DEA funds and was accompanied by an undercover DEA agent to the Burger King parking lot. Soon after contacting the appellant from a pay phone located in the parking lot, Gonzales arrived. After meeting with Gonzales, the confidential informant returned to his car and told the DEA agent that Gonzales would return in approximately fifteen minutes with an ounce of cocaine.

Following Gonzales' return to the Burger King parking lot five to ten minutes later, the informant approached, and entered, Gonzales' car where the two met privately, though under constant DEA surveillance. In addition to the ounce of cocaine, the informant and Gonzales arranged for the additional purchase of 500 grams of cocaine (for $10,500) later that same day. After exiting the appellant's vehicle, the informant returned to his car as Gonzales drove from the parking lot. The informant immediately handed Agent Rodriguez a plastic bag containing approximately one ounce of cocaine. Moreover, the informant no longer possessed the DEA's $600.

While under surveillance after leaving the Burger King parking lot, Gonzales drove to the residence of Leonel Fajardo ("Fajardo"), his co-defendant, then drove, alone, to his own residence. A short time later Gonzales emerged from his residence carrying a brown paper bag. The appellant entered his car and returned to Fajardo's residence whereupon Fajardo exited his residence and entered Gonzales' car. Gonzales and Fajardo then drove to meet the informant at a street corner selected by Gonzales to conduct the 500 gram cocaine transaction. Gonzales and Fajardo parked for a few minutes after arriving at the street corner, then drove back to Fajardo's residence when the informant failed to show. Unbeknownst to Gonzales and Fajardo, the informant had been advised by an unknown woman to leave the street corner due to police surveillance in the area.

As Fajardo exited Gonzales' car after arriving at Fajardo's residence, undercover officers emerged from behind the appellant's vehicle and identified themselves as law enforcement officers. Fajardo immediately bolted from the car carrying the brown paper bag, ran into and through his house, and was apprehended as he ran out his back door while throwing the paper bag to the ground. The bag contained white powder which was later determined to be approximately 300 grams of cocaine. Fajardo and Gonzales were immediately arrested. A search of Gonzales, incident to his arrest, resulted in an additional amount of cocaine (approximately 8 grams) being found in his pocket.

On November 9, 1989, a four-count superseding indictment charged Gonzales with conspiracy to possess with intent to distribute (and conspiracy to distribute) cocaine (Count I), distribution of 27.43 grams of cocaine (Count II), aiding and abetting the possession with intent to distribute 304.9 grams of cocaine (Count III), and possession of 7.8 grams of cocaine (Count IV).

Following a bench trial (Gonzales waived his right to a jury trial), the district court judge found the appellant guilty of Counts I, II and IV; the judge found Gonzales not guilty of Count III. After reviewing the Probation Office's presentence report, the district court judge departed upward from

the applicable Sentencing Guidelines' range (97–121 months) and sentenced Gonzales to 236 months in prison.

Gonzales thereafter filed a timely notice of appeal.

## II.

■ Sergio Gonzales argues that he was denied effective assistance of counsel because his attorney: (1) failed to demand a probable cause hearing to determine the legality of Gonzales' arrest; and (2) failed to produce the confidential informant at trial. This ineffective assistance of counsel claim was not presented to the district court, however. Because an ineffective assistance of counsel claim may not be raised for the first time on appeal, we are precluded from addressing the merits of Gonzales' claim. *See United States v. Swidan*, 888 F.2d 1076, 1081 (6th Cir.1989) ("This court will not review an ineffective assistance of counsel claim raised for the first time on appeal."). *See also United States v. Castro*, 908 F.2d 85, 89 (6th Cir.1990) ("Furthermore, although it strongly appears that defendant Rocha was not denied effective assistance of counsel, this court declines to consider the claim of ineffective assistance of counsel for the first time on appeal. The defendant may properly raise this issue in a motion to the district court pursuant to 28 U.S.C. § 2255."); *United States v. Iles*, 906 F.2d 1122, 1123 (6th Cir.1990) ("As for Iles' ineffective assistance of counsel argument, however, we are precluded from reviewing this argument for the first time on appeal."). *But see United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990) ("As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. When, however, the record is adequate to assess the merits of the defen-

dant's allegations, some courts will consider them. We believe such an exception is applicable in this case.").

Because Gonzales' ineffective assistance of counsel claim was not presented to the district court, and because the appellate record is not adequate to assess the merits of Gonzales' allegations, we are precluded from reviewing the appellant's ineffective assistance of counsel claim.

## III.

Gonzales next argues that his sentence was incorrectly calculated and unduly harsh:

> First the point of departure was in error because the Sentencing Guidelines were scored too high. There was no evidence to support the theory that defendant intended to distribute over 500 grams of cocaine—thus raising his Sentencing Guidelines base level to 26. Nor was there evidence that defendant organized the conspiracy; which, in turn, raised the base level to 28.... Moreover, there were no aggravating circumstances that would lead a reasonable factfinder to exceed the guidelines.... The reason taken into consideration for departure—basically defendant's prior record—were [sic] already factored in and, at any rate, do [sic] not justify the excessive departure that was given.

Appellant's Brief at 10–11 (footnotes omitted).

### Quantity of Cocaine

■ Though Gonzales argues that there was no credible evidence to support the district court's finding that the conspiracy involved more than 500 grams (but less than 2 kilograms) of cocaine, the appellant's argument is without merit. The United States Sentencing Guidelines provide:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of ... all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise

accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense[.]

United States Sentencing Commission, *Guidelines Manual,* § 1B1.3(a)(1) (Nov. 1989).

Though Gonzales appears to concede that he was involved in *some* cocaine trafficking, he argues that the 500 gram figure used by the sentencing court is too high in light of the amount of cocaine *actually* found in the brown paper bag (approximately 304 grams), the 27.43 grams previously sold to the informant, and the 7.8 grams found in the appellant's possession when arrested. However, "[u]nder the sentencing guidelines, the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total amount in order to determine the base level." *United States v. Perez,* 871 F.2d 45, 48 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). *See* U.S.S.G. § 2D1.4, comment. (n.1) ("If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale. If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.").

The prosecution bears the burden of establishing the amount of cocaine (for sentencing purposes) by a preponderance of the evidence. *United States v. Moreno,* 899 F.2d 465, 473 (6th Cir.1990). Because the district court found the evidence regarding Gonzales' cocaine dealings to be credible, the district court's determination that the conspiracy involved between 500 grams and 2 kilograms of cocaine was not clearly erroneous. *See generally* Fed.R.

Civ.P. 52(a) (district court's findings of fact should not be reversed unless clearly erroneous). Gonzales' assignment of error is therefore without merit.

### Role in the Offense

Gonzales argues that the district court erred by enhancing his sentence for his role as an organizer pursuant to Sentencing Guidelines § 3B1.1(c) which provides that a defendant's offense level be increased by two levels if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." The Application Notes to § 3B1.1 elucidate:

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

United States Sentencing Commission, *Guidelines Manual,* § 3B1.1, comment. (n. 3) (Nov. 1989). The prosecution must prove a defendant's status (as an organizer, leader, manager or supervisor) by a preponderance of the evidence. *United States v. Backas,* 901 F.2d 1528, 1529–30 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990).

Though Gonzales argues that he was not the leader or organizer of the criminal enterprise, the appellant's arguments are unpersuasive. As the Probation Office's presentence report correctly notes, Gonzales' culpability arose from numerous considerations:

The facts of the case that were brought out at trial indicated that it was the defendant who was the organizer, in that it was he who originally contacted the undercover informant, and that all contacts were between the defendant and the undercover agent, and none with Leo-

nel Fajardo. Also, it was the defendant who was observed canvassing houses—presumably collecting the cocaine. Finally, it was the defendant who was observed leaving his residence with the paper bag which was ultimately discovered to contain the cocaine.

Addendum to the Presentence Report at 1. Agreeing that Gonzales should be assessed the two-level enhancement for his leadership role in the offense, the district court judge noted that "it was the Defendant who was the organizer, and that it was he who originally contacted the undercover informant, and that all contacts were between the Defendant and the undercover agent." District Court's May 3, 1990 Sentencing Transcript at 15.

Evidence introduced at Gonzales' trial supports the conclusion that Gonzales acted as "an organizer, leader, manager, or supervisor" pursuant to Guidelines § 3B1.1(c). Gonzales' assertions to the contrary are without merit. Because the district court's findings regarding Gonzales' leadership role were not clearly erroneous, we uphold Gonzales' two-level enhancement pursuant to Guidelines § 3B1.1(c).

### Upward Departure

■ After reviewing Gonzales' criminal history, the Probation Office noted that the applicable Sentencing Guidelines' range failed to adequately reflect Gonzales' criminal history:

> Court records document that the defendant was arrested for two separate drug cases, pled guilty in each case, was placed on probation in both cases, violated his probation in both cases, and by virtue of the fact that he received prison sentences for both cases on the same day, these cases were consolidated. An upward departure may be warranted because the consolidation of the defendant's prior criminal cases does not adequately reflect the seriousness of his past criminal record or his potential for future criminal behavior.
>
> Finally, the fact that a Court previously consolidated the defendant's two drug

cases does not work against him now. It is still a windfall for him at this time. However, it is brought to the Court's attention at this time that the defendant's whole prior criminal record has not been adequately reflected by the Guidelines, not only because two serious drug felonies were counted as one, but also because their consolidation precluded the classification of the defendant as a career offender.

Addendum to the Presentence Report at 2–3.

Agreeing that an upward departure was warranted in this action due to Gonzales' criminal history, the sentencing judge held:

> [T]he Court believes, in this matter, that an upward departure from the Guideline range is indeed warranted. The Court believes that that upward departure should take into account the fact that there was a consolidation of the Defendant's two prior felony drug convictions, and the fact that only that consolidation of those two matters at the time of sentencing into one term of probation precluded the Defendant's classification as a career criminal.
>
> This offense, for which he has now been convicted, constitutes—constitutes Mr. Gonzales' fourth felony conviction, and his third felony drug-related conviction. Obviously, he has not taking [sic] seriously his other sentences, which have cost him, amazingly, a mere eight months in custody, and the Court firmly believes that it is now time that Mr. Gonzales pay the full penalty for the career of crime which he has chosen.

District Court's May 3, 1990 Sentencing Transcript at 18–19.

Notwithstanding the district court's articulated reasons for departing from the otherwise applicable sentencing range, Gonzales argues that "there were no aggravating circumstances that would lead a reasonable factfinder to exceed the guidelines.... The reason taken into consideration for departure—basically defendant's prior record—were [sic] already factored in and, at any rate, do [sic] not justify the

excessive departure that was given." Appellant's Brief at 10–11.

The United States Sentencing Guidelines specify when departure from the applicable guideline range is appropriate:

> Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing.... Similarly, the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (*e.g.*, as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.
>
> Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.

United States Sentencing Commission, *Guidelines Manual*, § 5K2.0 (Nov. 1989).

Moreover, "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." United States Sentencing Commission, *Guidelines Manual*, § 4A1.3 (Nov. 1989). *See also* U.S.S.G. § 4A1.2, comment. (n. 3) (If "a criminal history score ... underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public ... the court should consider whether departure is warranted.").

The Sixth Circuit employs a three-step analysis to review district court departures from the Sentencing Guidelines. *United States v. Joan*, 883 F.2d 491, 494 (6th Cir. 1989) (adopting the analysis announced in *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)). *See also United States v. Nelson*, 918 F.2d 1268 (6th Cir.1990) (employing the three-step *Diaz–Villafane* analysis). The *Diaz–Villafane* analysis utilizes three varying standards of review:

> First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.
>
> Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error.
>
> Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness. In this context, reasonableness is determined with due regard for "the factors to be considered in imposing a sentence," generally, and "the reasons for the imposition of the particular sentence, as stated by the district court...."
>
> This third step involves what is quintessentially a judgment call. District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge

from the antiseptic nature of a sterile paper record. Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure.

*United States v. Diaz–Villafane*, 874 F.2d at 49–50 (citations omitted) (footnote omitted). *See also United States v. Nelson*, 918 F.2d at 1270–71 ("[T]he *Diaz–Villafane* review methodology ... is now the settled standard of review for guideline departure cases in this circuit.").

### A.

Accordingly, "[o]ur first duty in applying the first prong of *Diaz–Villafane* is to identify the 'circumstances' relied upon by the trial court in departing from the guidelines and then to decide, *de novo*, whether those circumstances are sufficiently 'unusual' to justify the departure." *United States v. Nelson*, 918 F.2d at 1271.

Because the sentencing judge correctly determined that the Sentencing Guidelines understated Gonzales' true criminal history, the district court's upward departure was justified. *See* U.S.S.G. §§ 4A1.3, 5K2.0. *See also United States v. Diaz–Villafane*, 874 F.2d at 49 (The "circumstances relied on by the district court ... are of a kind or degree that may appropriately be relied upon to justify departure."). We must therefore proceed to the second prong of the *Diaz–Villafane* analysis.

### B.

The second *Diaz–Villafane* prong requires that we determine whether the "unusual" circumstances relied upon by the district court "actually exist[ed] in the particular case." *United States v. Diaz–Villafane*, 874 F.2d at 49. Because the uncontroverted facts in this action (as set forth in the presentence report and adopted by the district court) clearly satisfy this prong of the *Diaz–Villafane* analysis, we must next

determine whether the "degree" of the district court's departure was reasonable. *See id.* ("[T]he direction and degree of departure must, on appeal, be measured by a standard of reasonableness.").

### C.

Having determined that departure was warranted, we must now consider whether the direction and degree of departure was reasonable. *United States v. Christoph*, 904 F.2d 1036, 1042 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Because "[t]rial judges are on the front line dealing with real live defendants, and are in a far better position than appellate courts to determine the circumstances justifying an upward departure," *United States v. Joan*, 883 F.2d at 496, a "[district] court's discretion to depart from the Guidelines is broad." *United States v. Rodriguez*, 882 F.2d 1059, 1068 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). "Necessarily, the trial judge's determination must be given great deference, and, unless there is little or no basis for the trial court's action in departing, it must be upheld, provided the trial court has recognized that departure is the exception, and has adequately articulated its reasons for departure." *United States v. Joan*, 883 F.2d at 496.

Though the sentencing judge in the instant action determined that the Sentencing Guidelines directed a 97 to 121 month sentence (offense level 28; criminal history category III), the judge departed from the guideline range and sentenced Gonzales to 236 months due to the severity of his criminal history which was not reflected in his guideline range calculation. Pursuant to the Sentencing Guidelines' career offender provision, U.S.S.G. § 4B1.1, the sentencing judge determined that Gonzales' proper sentencing range dictated a 210 to 262 month sentence (offense level 32; criminal history category VI).[1] This departure can

---

1. In fact, it appears that the probation officer and the district court judge applied the wrong provision of § 4B1.1. Gonzales should have

been sentenced pursuant to § 4B1.1(B), *not* (C). Under § 4B1.1(B), the applicable guideline range would have been substantially higher (262

hardly be deemed unreasonable in light of Gonzales' crimes. *See United States v. Roberson*, 872 F.2d 597, 606 n. 7 (5th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989) ("[T]he mere fact that a departure sentence exceeds by several times the maximum recommended under the Guidelines is of no independent consequence in determining whether the sentence is reasonable."). Accordingly, "the extent of the district court's departure from the Guidelines ... was within the realm of reason." *United States v. Diaz–Villafane*, 874 F.2d at 52.[2]

### IV.

For the aforementioned reasons, we AFFIRM Gonzales' conviction and sentence.

to 327 months). Neither party addressed this error, however.

**2.** The district court properly moved directly from criminal history category III to criminal history category VI because of the Sentencing Guidelines' career offender provision, § 4B1.1. *See United States v. Medved*, 905 F.2d 935, 941–42 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991).