976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donnie Mack WILSON, Defendant-Appellant.
 No. 92-5075.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1992.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and COOK, Chief District Judge.*
 PER CURIAM.
 
 
 1
 After a jury trial, the defendant was convicted of one count of possessing unregistered hand grenades, in violation of 26 U.S.C. § 5861. On appeal, he argues that the government failed to produce sufficient evidence to establish that the grenades were "destructive devices" within the meaning of 26 U.S.C. § 5845(f) and that he received ineffective assistance from his trial counsel. We affirm.
 
 I.
 
 2
 In late 1988, Vito Alminas and Gary Bolba brought a shipment of hand grenades from Illinois to Kentucky. Alminas and Bolba left the grenades with Stephen Mart Davidson, who sold or gave away some of the grenades to several other persons. The defendant in this appeal, Donnie Mack Wilson, purchased three grenades from Davidson.
 
 
 3
 Davidson and a friend, Roger Morgan, met Wilson at a store owned by Wilson's father. Davidson showed the grenades to Wilson and offered them for sale. Davidson agreed to demonstrate the grenades for Wilson, and the three men set out for Tower Mountain. Davidson and Wilson detonated at least one grenade on the mountain and unsuccessfully attempted to detonate at least two others. After returning to the store, Wilson purchased three grenades from Davidson.
 
 
 4
 In early 1989, local police arrested Elvis Morgan, another recipient of Davidson's grenades. Elvis Morgan led the police to Davidson. When questioned, Davidson told the police that he had given grenades to Wilson and Wilson's brother, Herman Dale Wilson. The police searched the homes of the Wilson brothers and found three grenades in Herman Dale's home. No grenades were found in Donnie Mack's house.
 
 
 5
 The Wilson brothers agreed to turn over more grenades in June 1989. In a meeting with the authorities, Donnie Mack revealed that he had hidden three grenades in an abandoned truck. The police found the grenades in the truck.
 
 
 6
 In April 1991, a federal grand jury returned a 16-count indictment against Alminas, Bolba, Davidson, Elvis Morgan, both Wilson brothers, and three other defendants. After Davidson, Herman Wilson, and another defendant pleaded guilty, the district court conducted a joint trial for Donnie Mack Wilson and the four remaining defendants in October 1991.[1] During the trial, the court granted Wilson's motion for acquittal on a conspiracy count and denied his motion for acquittal on two possession counts.
 
 
 7
 The jury found Wilson guilty on Count 11, which charged him with possessing hand grenades on June 15, 1989, the date the grenades were discovered in the abandoned truck. The jury acquitted Wilson on Count 7, which charged him with possessing grenades on an unknown date in November or December 1988, corresponding to the date Wilson and Davidson tested grenades on Tower Mountain. The other four defendants were acquitted. After denying Wilson's post-trial motion for acquittal, the court sentenced him to 12 months' imprisonment. This appeal followed.
 
 II.
 
 8
 Wilson first argues that the government presented insufficient evidence to establish that the grenades were "destructive devices" within the meaning of 26 U.S.C. § 5845(f). When reviewing a sufficiency claim, we view the evidence in the light most favorable to the government and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 9
 To establish a violation of 26 U.S.C. § 5861, the government was required to prove that Wilson possessed an unregistered "firearm." The term "firearm" is defined to include a "destructive device." 26 U.S.C. § 5845(a)(8). The definition of "destructive device" specifically includes grenades, but excludes devices that are not designed or likely to be used as weapons. 26 U.S.C. § 5845(f).
 
 
 10
 We have held that a device may fall within the definition of a "destructive device" even if it does not operate as intended. United States v. Rushcamp, 526 F.2d 1380, 1382 (6th Cir.1975); see also United States v. Evans, 526 F.2d 701, 707 (5th Cir.) (holding dynamite bomb to be "destructive device" even though government agents twice failed to detonate it), cert. denied, 429 U.S. 818 (1976); United States v. Ragusa, 664 F.2d 696, 700 (8th Cir.1981) ("it is not necessary that the device function as intended"), cert. denied, 457 U.S. 1133 (1982).
 
 
 11
 Wilson correctly points out that a device is not destructive if it is missing essential components. See United States v. Malone, 546 F.2d 1182, 1184 (5th Cir.1977) (reversing conviction where hand grenade contained no explosive material); United States v. Blackburn, 940 F.2d 107, 110 (vacating sentence for possession of 30 grenades where only two actually contained powder). However, we do not read these cases as requiring the government to prove beyond a reasonable doubt that each component is present; instead, the government's burden is to prove beyond a reasonable doubt that the devices are destructive or could be readily made so.
 
 
 12
 With that standard in mind, we turn to the evidence produced at trial. The government introduced the testimony of Kentucky State Police Detective Richard Dye, an explosives expert. Dye testified that he had examined the grenades seized from the abandoned truck and that, in his opinion, they were destructive devices. Dye did not open the grenades seized from the truck and based his conclusion on his closer examination of grenades seized from other defendants.
 
 
 13
 Another state police explosives expert, Larry Henderson, testified that he inspected the contents of the grenade seized from Elvis Morgan, that he examined grenades seized from Herman Dale Wilson, and that he observed grenade damage on Tower Mountain. He concluded that the grenades seized from Elvis Morgan and Herman Dale Wilson and the grenade that exploded on Tower Mountain were all destructive devices.
 
 
 14
 Davidson's testimony linked those grenades to the three sold to Donnie Mack Wilson. Davidson testified that all of the grenades he sold came from a batch he received from Alminas. Officer Rodger Cooper, who found the grenade when he arrested Elvis Morgan, testified that the grenade had a zero-delay feature. Wilson's brother-in-law, Scott Randy Smith, testified that he overheard Davidson mention the zero-delay feature when he sold the three grenades to Wilson.
 
 
 15
 The testimony of Officer Dye directly supports the conclusion that the grenades seized from the abandoned truck were destructive devices. Even if Dye's testimony were discounted because he failed to dismantle those grenades, a rational trier of fact still could conclude that the grenades were destructive, since other grenades from the same batch either exploded or were found to be operable. Accordingly, we find that the evidence produced at trial was sufficient to support Wilson's conviction.
 
 III.
 
 16
 Wilson next argues that he received ineffective assistance of counsel at trial. Specifically, he complains that Counts 7 and 11 of the indictment were multiplicitous and that the court did not force the government to elect one of those counts because his attorney failed to object.
 
 
 17
 Wilson has not presented his ineffective assistance claim to the district court. A defendant properly raises that claim in the district court by filing a post-trial motion pursuant to 28 U.S.C. § 2255. We have held repeatedly that we normally will not consider ineffective assistance arguments for the first time on appeal. United States v. Gonzalez, 929 F.2d 213, 215 (6th Cir.1991); United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). However, we may consider such claims if the record on appeal is adequate to assess the merits of the claim. Gonzalez, 929 F.2d at 215. Since the parties agreed at oral argument that Wilson's ineffective assistance claim is ripe for review, we now consider its merits.
 
 
 18
 A defense attorney is ineffective for Sixth Amendment purposes only if he or she commits serious errors that prejudice the defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). We find that Wilson's claim fails both parts of the Strickland test. First, counsel's failure to object to the indictment was not an error at all because Counts 7 and 11 were not multiplicitous. Count 7 referred to Wilson's alleged possession of the grenades that were tested at Tower Mountain, while Count 11 referred to Wilson's possession of the grenades that were recovered from the abandoned truck six months later. The government clearly indicated in its closing argument that the two counts referred to different grenades and different periods of time.
 
 
 19
 Second, Wilson has not pointed to any evidence that presence of the two counts prejudiced his defense. Indeed, the jury was able to distinguish the two counts, as it acquitted him on Count 7 and convicted him on Count 11. Accordingly, we find no merit to Wilson's ineffective assistance claim.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable Julian A. Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Alminas' case had been severed from those of the other indictees