**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eric UNTHANK; David Averitt,
Defendants–Appellants.**

**Nos. 02–5310, 02–5449.**

United States Court of Appeals,
Sixth Circuit.

Aug. 24, 2004.

Rehearing En Banc Denied Nov. 2, 2004.

**626**

Before NORRIS, BATCHELDER and COLE, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant Eric Unthank appeals his conviction and Defendant David Averitt appeals his conviction and sentence after a jury trial on a multi-count indictment. Unthank was named only in Count 1 of the indictment, which charged both defendants with knowingly and intentionally attempting to manufacture methamphetamine, and aiding and abetting each other in that attempt, in violation of 21 U.S.C. §§ 846 and 18 U.S.C. § 2. Averitt was named in six additional counts, charging him with possession of methamphetamine in violation of 21 U.S.C. § 844; possession of a destructive device in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii); possession and brandishing of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and knowingly receiving and possessing an unregistered destructive device, in violation of 26 U.S.C. §§ 5861(d) and 5871. Each defendant was found guilty as charged. For the reasons stated below, we AFFIRM Unthank's conviction and Averitt's conviction and sentence.

*Background*

While visiting the local Wal–Mart, Unthank purchased three boxes of Equate cold medicine, while, at the same time but in another checkout line, Averitt attempted to purchase another three boxes of Equate Cold Medicine, sixteen bottles of automobile starter fluid, and two pairs of rubber gloves. When a suspicious checkout clerk undertook to report to her supervisor this collection of merchandise, Averitt hastily left the store without purchasing the items. The Wal–Mart employees were apparently aware that the chief active ingredient of Equate Cold Medicine is pseudoephedrine, which, in addition to its legitimate medicinal use, is also a primary ingredient of home-made methamphetamine. Outside the store, the Wal–Mart manager saw Averitt bend the license plate of a truck so that its number could not be read, and saw Averitt and Unthank leave the parking lot in that truck. The manager called the Kentucky State Police. Police officers followed the truck and attempted to pull it over, but the defendants tried to escape, running off the road and into a field, and eventually coming to a stop at a fence.

One of the troopers who had been following the truck approached the driver's side of the truck and repeatedly ordered Unthank, the driver, to exit the vehicle with his hands in the air. Unthank finally complied. On the other side of the truck, Averitt, who had previously exited the truck, was standing with his back to the troopers and his hands out of sight. When ordered by a trooper to get down on the ground and to put his hands on his head,

Averitt silently refused to comply; after the order had been repeated several times, Averitt turned toward the trooper, who saw that Averitt was holding a 9 millimeter pistol in one hand, pointed directly at the trooper, and a hand grenade in the other. The trooper shot him, and Averitt fell to the ground; his hand grenade, its pin having been pulled, erupted in a flash and explosion that "rocked" the trooper but did no serious damage to any of the parties.

After securing Averitt and Unthank, the troopers discovered on Averitt's person two fully loaded magazines for the 9 millimeter pistol, some methamphetamine and identification in two different names. The troopers arrested both defendants and, in the inventory search of the truck, discovered the pseudoephedrine Unthank had purchased at the Wal–Mart, as well as other drug-making paraphenalia. An explosives expert called to examine the grenade, which had failed to fragment, discovered that it was a training grenade that had been filled with black powder and ineptly fitted with a fuse not designed for a training grenade. The grenade had failed to fragment only because the fuse did not fit properly.

The district court tried the defendants together before a jury. At the close of evidence, the court denied each defendant's motion for judgment of acquittal. The jury convicted each of the defendants on the count or counts in which he was charged, and the district court sentenced Unthank to 155 months of incarceration and Averitt to a total of 531 months of incarceration. Each defendant timely appealed.

### Analysis

#### A. Unthank

■ Unthank argues only that there was insufficient evidence to support his conviction for attempting to manufacture and aiding and abetting an attempt to manufacture methamphetamine. Specifically, he claims that the evidence did not support a finding that he took any "substantial step" in furtherance of the attempted manufacture or that he intended to manufacture methamphetamine, and that, in fact, he withdrew from any such attempt. In response, the government argues that there is considerable evidence that Unthank both intended to manufacture methamphetamine and took a substantial step toward the manufacture of methamphetamine,

We are required to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) [internal quotations omitted]). Where the crime charged is an attempt crime, those elements are: first, that the defendant intended to commit the proscribed criminal conduct, and second, that the defendant committed an overt act that constituted a substantial step toward committing that proscribed conduct. *United States v. Bilderbeck,* 163 F.3d 971, 975 (6th Cir.1999).

The jury in this case heard evidence that: (1) Unthank purchased pseudoephedrine; (2) pseudoephedrine is the essential ingredient in methamphetamine; (3) Averitt contemporaneously attempted to purchase both pseudoephedrine and starter fluid; (4) starter fluid is a common solvent used for processing pseudoephedrine into methamphetamine; (5) defendants left the store with three boxes of pseudoephedrine; (6) Unthank drove the truck in which the defendants fled from the police; and (7) in

the truck in which the defendants attempted to escape, police discovered numerous items commonly utilized in the production of methamphetamine. We think this evidence is more than sufficient to support the jury's verdict, and we therefore AFFIRM Unthank's conviction.

## B. Averitt

Averitt purports to raise four assignments of error in this appeal: (1) that the evidence was insufficient to support the jury's verdict that he possessed a destructive device as defined in 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii) and § 921(a)(4)(A)(ii); (2) that the trial court erred in its computation of the amount of methamphetamine Averitt could have produced; (3) that the trial court erred in failing to award Averitt a reduction in offense level for acceptance of responsibility; and (4) that the trial court erred in increasing Averitt's offense level for obstruction of justice. Averitt's brief on appeal develops the argument for only the first of these issues; the brief provides neither argument nor citation to authority for the remaining three issues, and Averitt's counsel did not provide argument or authority as to them in oral argument. When a party has "failed to adequately brief [the] court, we consider [those] claims to have been abandoned." *United States v. Hough*, 276 F.3d 884, 891 (6th Cir.2002) (citing *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 154 (6th Cir.1996) (holding that arguments not fully briefed are deemed abandoned)). Accordingly, we hold that the second, third and fourth assignments of error raised by Averitt have been abandoned, leaving for our review only his claim that the evidence is insufficient to support his conviction for possessing a destructive device in furtherance of a drug trafficking crime.

■ "Destructive device" is specifically defined in Section 921, the definitional section for Section 924, to include grenades. *See* 18 U.S.C. § 921(a)(4)(A)(ii). Section 921(a) also provides that "the term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon." Averitt argues that evidence is insufficient to support the jury's verdict that he was guilty of possessing a destructive device because the device he was convicted of possessing was merely a "training grenade" that failed actually to explode. We review this claim under the same *Jackson v. Virginia* standard that we applied to Unthank's insufficiency claim.

The government argues that the device did explode and that it falls within the definition contained in 18 U.S.C. § 921(a)(4)(A)(ii), the applicable statute. The government points to the expert testimony of U.S. Army Sergeant Eric Loar, who testified that the grenade had originally been a training grenade, which is not designed to contain explosives. This grenade, Loar said, had been modified to include packed black powder and a fuse of a type not used in training grenades, and but for the fact that the fuse did not fit properly, the grenade would have powerfully fragmented.

Averitt does not argue that he did not possess the device at issue or that the possession was not in furtherance of a drug trafficking offense; he argues only that the evidence is not sufficient to support a finding that the device he possessed was a destructive device as defined by the statute. We disagree. The evidence presented to the jury was sufficient to permit a rational jury to conclude that the device Averitt held in his hand was a grenade; the evidence does not permit the finding that Averitt urges here, namely, that the grenade had not been redesigned to func-

tion as a weapon. Furthermore, we have held that a destructive device need not operate as intended to satisfy the statute. *See United States v. Rushcamp,* 526 F.2d 1380, 1382 (6th Cir.1975). This holding is in accord with those of our sister circuits. *See, e.g., United States v. Evans,* 526 F.2d 701, 707 (5th Cir.1976) (statute does not require actual detonation); *United States v. Kiliyan,* 456 F.2d 555, 557 (8th Cir.1972) (black powder modified grenade that failed to discharge still a "destructive device."). Finally, according to trial testimony that the jury was free to credit, the device did in fact explode, although not with the high pressure fragmentation commonly associated with fragmentation grenades. The evidence presented by the government supports a finding that the device was redesigned to fragment, as well as a finding that the device did in fact explode, albeit not particularly effectively. Accordingly, we AFFIRM Averitt's conviction for possession of a destructive device.

### Conclusion

For the foregoing reasons, we AFFIRM the judgments of conviction as to each of these defendants.